UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

RANDY LYNN, )
)
Plaintiff, )
)
vs. ) No. 1:13-cv-00179-JMS-TAB
)
CITY OF INDIANAPOLIS, )
NATHAN CHALLIS, and )
TIMOTHY R. HUDDLESTON, )
)
Defendants. )

**ORDER ON MOTIONS TO EXCLUDE EXPERT WITNESSES**

**A.     Introduction.**

On the night of February 2, 2011, Plaintiff Randy Lynn had an epileptic seizure. A passerby called 911 to report that Lynn was convulsing and possibly having a seizure. IMPD officers responding to the call thought Lynn may have been under the influence of narcotics. An altercation ensued during which officers Nathan Challis and Timothy Huddleston tased and hit Lynn multiple times while attempting to handcuff him. This lawsuit followed.

A jury trial is set for February 9. Defendants Challis and Huddleston face claims of excessive force, false arrest, and failure to intervene pursuant to 42 U.S.C. § 1983. Defendant City of Indianapolis faces state law claims of assault, battery, excessive force, false imprisonment, and malicious prosecution. Both sides have filed motions to exclude expert witnesses, which the Court addresses below.

**B.    Defendants' Motion to Exclude.**

Defendants seek to exclude Plaintiff's expert, Dr. Nikesh Ardeshna, for two reasons. First, Defendants argue that Ardeshna's report does not comply with the requirements of Fed. R. Civ. P. 26(a)(2). Specifically, Defendants note that Ardeshna's "report" is nothing more than a self-described "information piece" that contains general information regarding epilepsy and seizures but doesn't even mention Lynn. [Filing No. 77-1.] Second, Defendants seek to exclude Ardeshna under Fed. R. Evid. 702 on the ground that his testimony will not help the trier of fact better understand the evidence or determine a fact in issue.

Defendants are correct that Ardeshna's report does not comply with Rule 26(a)(2), which sets forth a comprehensive list of items that must be contained in an expert report. Lynn contends, however, that he has substantially complied with the rule and that Defendants have not been prejudiced. The Court agrees.

Lynn's criminal defense attorneys consulted with Ardeshna in their successful effort to get the charges against him dismissed. Lynn timely disclosed Ardeshna in this civil case in June 2013 in his initial disclosures and in his July 21, 2013, preliminary witness list. [Filing No. 21, at ECF p. 2.] On March 1, 2014, Lynn served his second expert disclosures on Defendants that included Ardeshna's expert report and curriculum vitae, and stated that Ardeshna was expected to testify consistently with his previously recorded statement. [Filing No. 86.] This recorded statement is a 50-minute, 15-page recorded interview with prosecutors and defense lawyers in Lynn's criminal case that occurred on November 7, 2012. In 2013, Lynn and Defendants produced this statement to each other during written discovery in this civil case. [Filing No. 86, at ECF p. 3.] On November 20, 2014, in response to Defendants' request, Lynn provided

Defendants with Ardeshna's updated CV, and Lynn provided additional supplementation on November 23 and 27, 2014.

All of this easily could have been avoided had Lynn initially made a proper Rule 26(a)(2) expert disclosure. However, in the Court's view, Lynn has adequately cured the deficiencies in his expert report. Defendants claim that they will be prejudiced as a result, but Defendants' position is undermined not only by Lynn's multiple efforts to cure these deficiencies but also by defense counsel's own emails. On July 18, 2014, Lynn's counsel asked defense counsel if Defendants wanted to depose Ardeshna. Defendants indicated that they did, and asked if any of the experts were treating doctors. Lynn's counsel responded that Ardeshna is not a treating doctor. [[Filing No. 86-10](#).] On November 12, 2014, defense counsel again asked in an email exchange whether Ardeshna was a treating doctor. [[Filing No. 86-11](#).] Lynn's counsel responded by reminding defense counsel that Ardeshna was not a treating doctor. [[Filing No. 86-12](#).]

Lynn appropriately points out that these email exchanges demonstrate that Defendants had not been planning to depose Ardeshna, did not know who he was, were not aware that they had his report or interview, and did not know the capacity in which he was testifying. Thus, Lynn concludes, "they could not have been, and were not, prejudiced by any technical deficiencies." [[Filing No. 86, at ECF p. 14](#).] Defendants' suggestion in their reply brief that these emails actually demonstrate that they were reasonably confused by Lynn's disclosures is, in a word, unavailing. Accordingly, the Court finds that the shortcomings in Lynn's expert disclosure were harmless and have been adequately cured.

Defendants' attempt to exclude Ardeshna's expert report using Evidence Rule 702 fares no better. Rule 702 states in relevant part that an expert may testify in the form of an opinion if

the testimony will help the trier of fact better understand the evidence or determine a fact in issue. Defendants assert that while Ardeshna's testimony about the "generalities of epilepsy and seizures" and patients' mental states was undoubtedly relevant in the criminal prosecution, Lynn's mental state in this civil case is irrelevant. [Filing No. 77, at ECF p. 12.] However, as Lynn correctly points out, as an epileptologist and neurologist Ardeshna can testify broadly with respect to epilepsy, seizures, their causes, and how people behave before, during, and after seizures. [Filing No. 86, at ECF p. 7.]

One of the issues in this case is the reasonableness of the officers' conduct. As noted in the entry on summary judgment, the "key issue" is whether Huddleston reasonably believed that Lynn "was on drugs rather than the person who had reportedly suffered from a seizure." [Filing No. 67, at ECF p. 14.] Ardeshna's testimony can shed light on this key issue, and therefore under Rule 702 his testimony could help the jury better understand the evidence or determine a fact in issue.

As Lynn points out, Ardeshna explains that it is common for people in a postictal state to be unable to speak, and sometimes possess "super-human strength." [Filing No. 86, at ECF p. 10.] Defendants proffered testimony at summary judgment that Lynn did not speak when confronted by police and seemed extremely strong. [Filing No. 67, at ECF p. 5-6.] Moreover, Ardeshna provides corroborating evidence for Lynn's testimony that he doesn't remember any of the incident after his seizure began.

Perhaps Defendants' most valid criticism of Ardeshna's anticipated testimony is that he has failed to provide a sufficient foundation for his opinions. Trial courts must fulfill their gatekeeping role as described in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 57 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Ardeshna's two-page (single

4

spaced) information piece is lacking in principles and methodology.  Lynn's failure to directly address this shortcoming in his response brief is not helpful.  [Filing No. 86.]

However, this is not a case in which an expert is being called to expound upon test results or other empirical data.  By all appearances, Ardeshna's testimony is merely an accepted, medically based explanation of how people with epilepsy can behave when they have seizures.  Ardeshna explains that the information in his report is what he provides to his epileptic clinical patients.  He is an epileptologist and neurologist.  Such testimony does not hinge on a lab test, and should not be excluded by way of a pretrial motion.  Cross examination, combined with appropriate trial objections, are more than adequate tools to address any ongoing concerns about Ardeshna's expert testimony.  For all of these reasons, the Court denies Defendants' motion to exclude expert testimony.

**C.     Plaintiff's Motion to Exclude.**

Lynn seeks to exclude the testimony of Indianapolis Metropolitan Police Department Sergeant Nathan Barlow.  Lynn argues that Barlow's opinions lack foundation, are unreliable, are irrelevant, pose a danger of unfair prejudice, and therefore should be excluded under Evidence Rules 401, 403, 702, and 703. Defendants respond that Barlow is the leading authority on the use of force at IMPD, that he can testify about the training Defendants received, whether Defendants' use of force was reasonable and necessary, and whether Defendants' use of force was consistent with IMPD policies.  The Court agrees that Barlow should be permitted to testify at trial.

Barlow gave deposition testimony in this case in which he stated that the training Defendant officers received was based upon a video from the Epilepsy Foundation.  [Filing No. 79-1, at ECF p. 104.]  Lynn argues that the video provides no support for Barlow's conclusions.

[Filing No. 79, at ECF p. 10-11.] The main point of disagreement appears to center around Barlow's testimony that Lynn was somewhat responsive to commands, and that therefore it was reasonable that Huddleston did not believe Lynn was having a seizure. [Filing No. 78-2, at ECF p. 4.] Barlow presumably would testify at trial that officers reasonably believed Lynn may have been under the influence of narcotics. According to Defendants, the video states that seizures temporarily block normal communication, and supports Barlow's testimony that individuals suffering a seizure are not able to willfully comply with commands such as those Huddleston allegedly gave to Lynn. [Filing No. 93, at ECF p. 5.]

Lynn protests that when Huddleston encountered him he was in a postictal state (the period immediately following a seizure), and that some people in this state can respond to commands and even perform complex tasks. [Filing No. 101, at ECF p. 8.] Lynn argues that the video provides no basis for Barlow to conclude that someone who is postictal couldn't behave as Lynn did on the evening in question. [Filing No. 79, at ECF p. 11.]

In the Court's view, the parties' disagreement on this issue is largely a matter of splitting hairs. They debate what Barlow actually said in his deposition and what the Epilepsy Foundation video actually shows. This debate seemingly turns on whether Barlow's testimony focused on the postictal phase. Defendants insist it did not. ("Thus, there is adequate support for Sgt. Barlow's opinion that **individuals suffering a seizure** are not able to willfully comply with commands such as Officer Huddleston's commands." [Filing No. 93, at ECF p. 5.] (Emphasis in original.)) The parties may continue to debate at trial exactly what Barlow said, and whether his reliance on the Epilepsy Foundation video is well founded. This debate, however, falls far short of what would be needed to exclude Barlow's testimony under Evidence Rules 702 and 703.

Lynn raises other concerns regarding Barlow's testimony.  Lynn argues that any testimony that Defendant officers' conduct complied with IMPD policy should be excluded as irrelevant under Evidence Rules 401 and 402.  The issue for the excessive force inquiry is not whether the officers complied with IMPD policy, Lynn argues, but rather whether the force was objectively reasonable under the circumstances.  [Filing No. 79, at ECF p. 14.]  Lynn relies on *Thompson v. City of Chicago*, 472 F.3d. 444, 454 (7th Cir. 2006), to bolster this argument.

As Lynn concedes, however, *Thompson* does not stand for the proposition that evidence that officers complied with department policy is inadmissible in an excessive force case.  [Filing No. 79, at ECF p. 15.]  Rather, *Thompson* held that evidence that an officer violated a general order is not evidence that the officer violated the Fourth Amendment.  *Id.*; accord *Whren v. United* States, 517 U.S. 806 (1996).  Defendants agree that evidence of policy violations is immaterial to whether police acted unreasonably.  [Filing No. 93, at ECF p. 13.]  Defendants argue, however, that such evidence may be probative of whether officers acted reasonably.  The Court agrees with Defendants that Barlow's testimony that Defendants complied with IMPD's policies could be relevant to whether Defendants' actions are objectively reasonable.  Lynn has not cited the Court to any case directly supporting a pretrial exclusion of expert witness testimony on this point, so his relevance arguments fail.

Lynn also makes a final, somewhat half-hearted argument that Barlow's testimony is unduly prejudicial and should be excluded under Evidence Rule 403.  [Filing No. 79, at ECF p. 17.]  Defendants aptly deflect this argument [Filing No. 93, at ECF p. 13-15], and Lynn's reply brief makes no effort to salvage this argument.  [Filing No. 101.]  Accordingly, Rule 403 likewise does not support a pretrial ruling excluding Barlow's testimony.

**D. Conclusion.**

Whether Defendants acted unlawfully on the evening of February 2, 2011, in response to Lynn's epileptic seizure is a hotly contested issue. The testimony of Ardeshna and Barlow may help shed light on this issue. Both of these experts likely will face vigorous cross examination. However, a pretrial ruling barring their testimony goes too far. For these reasons, Defendants' motion to exclude [Filing No. 76] and Plaintiff's motion to exclude [Filing No. 78] are denied.

Dated: 1/14/2015

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Beth Ann Garrison
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
beth.garrison@indy.gov

Andrew J. Upchurch
OFFICE OF CORPORATION COUNSEL
andrew.upchurch@indy.gov

Angela S. Joseph
OFFICE OF CORPORATION COUNSEL
200 E. Washington Street
Suite 1601
Indianapolis, IN 46204

Amanda J. Dinges
OFFICE OF CORPORATION COUNSEL
amanda.dinges@indy.gov

Stephen B. Caplin
PROFESSIONAL CORPORATION
sbcaplin@gmail.com

Andrew R. Duncan
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
ard@rucklaw.com

Edward J. Merchant
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
ejm@rucklaw.com

John F. Kautzman
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
jfk@rucklaw.com

David Hoa Khoa Nguyen
SNIDERMAN NGUYEN LLP
david@snlawyers.com

Mark W. Sniderman
SNIDERMAN NGUYEN LLP
mark@snlawyers.com